CHADBOURNE et al. v. STOCKTON SAV. & LOAN
SOCIETY.

No. 18,173; March 14, 1894.

36 Pac. 127.

**Execution—Interest of Possible Vendee.**—One to whom an offer
for the sale of land is made—the offer to be kept open only on certain
conditions—has not, in the absence both of a compliance with such
conditions and an acceptance of the offer, an interest in the land,
which is subject to sale on execution.

**Bank—Authority of President as to Land Contract.**—In the ab-
sence of authority by charter, resolution, or by-law, it will not be pre-
sumed that the president of a bank is authorized to waive conditions
of a contract for the sale of land.

APPEAL from Superior Court, San Joaquin County; Ansel
Smith, Judge.

Action by Joshua Chadbourne and others against the Stock-
ton Savings and Loan Society. From a judgment for plain-
tiff, and an order denying motion for new trial, defendant
appeals. Reversed.

Baldwin & Campbell and James H. Budd for appellant; J.
B. Webster and L. W. Elliott for respondents.

TEMPLE, C.—This is an appeal by defendant from the
judgment and an order refusing a new trial. The case has
been here before, and is reported: 88 Cal. 636, 26 Pac. 529.
The action is based upon an offer on the part of the defendant
to sell certain land, which offer is set out in full in the report
of the last appeal. On that appeal it was held that the com-
plaint was defective, and that a demurrer interposed to it
should have been sustained, because, it is said, the offer had
not been accepted within a reasonable time, nor was there
any excuse shown for delay. It is then said: "As there is no
allegation in the complaint showing that the agreement of
Hart to keep the buildings insured, and to assign to the de-
fendant the policies of insurance, as provided by the terms of
said instrument—which was the only consideration of the offer

to sell—was ever performed or excused, we advise that the judgment and order be reversed, with directions to the court below to sustain the demurrer.'' The judgment was reversed, therefore, partly because it was not averred that Hart had insured the buildings. The point was certainly presented by the demurrer. It now appears in the proof that the buildings were not insured by Hart or anyone else. Respondents say the agreement to insure was not a condition precedent. If it was not, it had no binding force whatever. The writing was merely an offer to sell, and imposed no obligation upon Hart. He simply could not avail himself of the offer unless he complied with the conditions. But, whether right or wrong, since the facts in reference to this matter are precisely as they appeared to be on the last appeal, the conclusion has become the law of the case. The offer of William Hart was contemporaneous with a demise of the premises, and was attached to the lease. The lease, however, was not to William Hart, nor is it shown in any way that William Hart had any previous relation to the premises, or any interest in the leasehold estate, or control over the tenants. It does not appear, therefore, that he had an insurable interest in the buildings. He must have procured the insurance, if at all, in the name of the defendant. Furthermore, the offer was conditioned that the first year's rent should be paid by August 16, 1888. Hart was not liable for such payment, so far as appears. This rent was not paid at that time. While it was in default, an execution was sued out at the instance of a creditor of William Hart, and levied upon the land, and the interest of said Hart in the same was sold as real estate.

It is claimed and admitted that defendant, through its president, at the sale under the execution, forbade the sale, and notified those intending to bid that William Hart had no interest in the premises, because the conditions upon which the offer was made had not been complied with. Nevertheless, plaintiff's grantors bought in the premises, and plaintiffs are not the assignees of William Hart, as to his interest in the offer to sell, unless they acquired such interest through such sale. It is evident that the conditions upon which such offer was made did not transpire, and there would seem to be no doubt that the defendant was thereby relieved of its obligation to keep the offer open. Subsequently, however, to the execu-

tion sale, the rent was paid and accepted. Now, Hart had no interest in the premises, was not in possession, and had expended no money because of the option. He had not accepted the offer, and has never done so. After plaintiffs received their deed from the sheriff, six months after the sale, they tendered to defendant the money for the land, which tender was refused. In its answer, defendant denies that it made the offer to Hart, or that Hart accepted any such offer, or acquired or had any interest in the premises, or that plaintiffs have acquired the rights of Hart under said option. It admits the payment of rent, but avers that the rent was paid long after August 16, 1888. It avers that the buildings were not insured, and denies that the defendant ever waived that condition of the option. It also denies that defendant ever agreed to convey the land, notwithstanding the failure of Hart or of plaintiffs to comply with its conditions. There is evidence tending to show that, soon after plaintiffs received the sheriff's deed to the land, they called upon Shippee, the president of the defendant corporation, and proposed to complete the purchase according to the offer; that Shippee replied that, when they purchased, Hart had no interest in the land, because the rents had not been paid, but since then the rents had been paid, and Hart had an interest, and the bank would convey it to plaintiffs, if Hart's son, to whom he understood Hart had assigned his right, did not wish to purchase, and that it would be necessary to wait till the time was up, when, if no one else claimed the privilege, he would be glad to accept the plaintiffs' offer; that afterward, when the time was about to expire, and plaintiffs made the formal tender, it was declined solely because Hart was still claiming the right, and had also made a tender, and Shippee said the courts must settle the question as to who had the better right. If it be conceded that Shippee, in making these statements. acted for the corporation, they do not prove a waiver of the conditions of the offer. It must be remembered that there was no contract of purchase. Hart was not in possession, and had no interest in the property, save such as he acquired under the offer. That was conditioned, and, so far as payments of rent are concerned, not upon any performance or default on the part of Hart. Payment of rent was an indifferent circumstance, except as made material by the terms of the offer mak-

ing it a condition. There was no forfeiture of an estate in land. It was merely that the event did not happen upon which the offer was conditioned. That being so, plaintiffs acquired nothing by their execution sale. If the corporation was still willing to convey, it was not in pursuance of the offer, which by its own terms was no longer open, but because it was still ready to sell for the price named. It is not neces· sary to determine whether a mere offer to sell land, while it is unaccepted, constitutes an interest in the land, which will pass under an execution sale. There was here no such offer outstanding when the sale was made. But it was not shown that Shippee had any authority to bind the corporation by such waiver, conceding that such waiver could have been made. It was not shown that he had such authority, as president, through a by-law or by resolution, nor that he had been accustomed to transact such business, and that his authority to do similar acts had been recognized by the directors. The authorities are agreed that, as president, he had no such authority, unless it is so ordained in the charter, by-laws, or by resolution. It has sometimes been held, however, that, when the president assumes to act for the corporation in a matter pertaining to the usual business of the corporation, authority will be presumed, in the absence of proof. This was a transaction for the sale of land, and such corporations are prohibited from dealing in land, except within quite narrow limits. It may be true that, when they do violate the law in this respect, no one can object, or take advantage of the fact, except the state. Still, such prohibited business cannot be held to be the customary business of the bank, and authority will not be presumed in the president merely by virtue of this office. I recommend that the judgment and order be reversed and a new trial had.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.